[No. C031330. Third Dist. Feb. 28, 2000.]

FRIENDS OF THE TRAILS et al., Plaintiffs and Appellants, v.
JON E. BLASIUS et al., Defendants and Appellants;
NEVADA IRRIGATION DISTRICT, Defendant and Respondent.

[No. C032253. Third Dist. Feb. 28, 2000.]

FRIENDS OF THE TRAILS et al., Plaintiffs and Respondents, v.
JON E. BLASIUS et al., Defendants and Appellants.

**COUNSEL**

Haley & Bilheimer, Allan S. Haley and John Bilheimer for Plaintiffs and Appellants and for Plaintiffs and Respondents.

James S. Burling; Eric Grant; John A. Ramirez; and Harold E. Johnson for Defendants and Appellants.

Minasian, Spruance, Baber, Meith, Soares & Sexton, and William H. Spruance for Defendant and Respondent.

**OPINION**

**BLEASE, Acting P. J.**—This matter concerns appeals and cross-appeals from the judgment in an action to declare a public easement for use of a road along the side of an irrigation canal.

Defendants Jon and Robin Blasius (collectively the Landowners) appeal from a judgment which declares and enjoins interference with a public easement for a right-of-way and recreation along the portion of their property crossed by an irrigation district canal. They contend the trial court erred in finding a public easement. We conclude the public acquired an easement

for passage and recreational purposes before March 4, 1972, in the manner provided for under *Gion v. City of Santa Cruz* (consolidated with *Dietz v. King*) (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50] (*Gion-Dietz*). We also conclude the easement was not extinguished or otherwise affected by the enactment of Civil Code section 1009, which prospectively imposes restrictions on the acquisition of a public easement. (See Stats. 1971, ch. 941, § 2, pp. 1846-1847.) We also conclude the trial court did not err in awarding attorney's fees to Friends of the Trails under Code of Civil Procedure section 1021.5.

We will affirm the judgment and the orders awarding attorney's fees and costs.

### FACTS AND PROCEDURAL BACKGROUND[1]

The land in question is adjacent to a 240-foot section of the aptly named Rattlesnake Canal, which snakes through the California foothills for many miles. This section of the canal, constructed from 1926-1927, crosses the Landowners' property and runs generally north to south. The canal consists of a ditch approximately 16 feet wide and an adjacent berm. The ditch is used to convey water for purposes of the Nevada Irrigation District (NID). Atop the berm is a road approximately nine feet wide, used by NID to access the canal and adjacent facilities for their maintenance and repair. NID maintains and operates the portion of the canal in issue pursuant to a written easement of record.

The land in question has been owned by various persons. During the period 1957 to 1981 it was owned by Frank and Madeleine Duncombe. During this period Frank Duncombe was aware the public used the canal road and he believed they had the right so to do. No one asked for or received his permission to use the road during the 25 years he owned the land. He did not object to or attempt to limit the public's use of the road.

In 1981 Duncombe conveyed the land to Deborah Best. She had occupied adjoining land since 1966 and used the canal road for recreational purposes with her children. Contemporaneous with that conveyance Best married the defendant Jon Blasius. He acquired a 75 percent interest in the land in 1991, when Best died. He remarried and conveyed his interest to himself and his new wife, defendant Robin Blasius.

In August 1996, the Landowners obtained the fee interest in the entire property. In September 1996, they blocked the canal road with a locked gate

---

[1]We take the facts for the most part from the trial court's statement of decision.

at each end of the section that crosses their land. Only the Landowners and NID have keys to the gates. Since that time the Landowners have denied passage through the gates to members of the public, including their neighbors.

On September 4, 1997, Friends of the Trails filed the complaint beginning this action. They sought to quiet title to a public easement for recreational purposes, including walking running, fishing, and riding horses and bicycles. They also sought injunctive and declaratory relief. They named as defendants the Landowners and NID.

Eventually the matter came on for trial. Friends of the Trails adduced evidence from 19 witnesses summarized as follows by the trial court. "The use [of the canal road] spanned the period from the 1940's through 1971. These witnesses all used the canal road themselves and also saw others using the canal road. The evidence clearly established that the use was more than just neighbors crossing neighboring land, and that the use was made by various people, young and old, families and single persons, friends, guests, visitors and strangers, coming from nearby as well as from more than four miles away. The uses included walking, jogging, riding bicycles or horses, and fishing, as well as using the canal road as a means to get from one place to another, and to go to or from school. . . . [¶] . . .

"All the witnesses called by plaintiffs testified that they neither asked nor received permission to use the canal road. All those witnesses testified that no objection was ever made to their use. All those witnesses testified that they believed the canal road was a public right-of-way, and that they used it as such."

The trial court's statement of decision explains its view that Friends of the Trails had proved the public acquired an easement for recreational purposes before March 1972, in the manner provided for under *Gion-Dietz, supra,* 2 Cal.3d 29. The ensuing judgment declares the public had acquired title to: "an easement for public right-of-way and recreational purposes across the property presently owned by Jon and Robin Blasius." The judgment provides that the easement: "consists of the width of the Rattlesnake Canal plus its westerly berm, which is nine feet wide, more or less . . . ." It provides that the easement is: "for non-motorized right-of-away and recreational uses by the public, being walking, jogging, riding bicycles and horses, and fishing in the Rattlesnake Canal. Such easement rights are subordinate to the easement rights of record in the Blasius Property held by the defendant [NID]." The

judgment enjoins the Landowners from interfering with or obstructing the easement so declared. In conclusion it recites: "No relief is granted in favor of plaintiffs against defendant [NID]."

In proceedings after judgment, Friends of the Trails were awarded attorney's fees, under Code of Civil Procedure section 1021.5, and costs of suit against NID and the Landowners.

## DISCUSSION

## I

■ The Landowners contend the trial court erred in finding a public easement. They argue that such an easement is an unwarranted application of *Gion-Dietz, supra*, 2 Cal.3d 29, and, in any event, is precluded under the law pertaining to easements because of the preexisting NID easement. We disagree.

### A. *Gion-Dietz and the Law of Implied Dedication of a Public Easement*

We first turn to a brief survey of the doctrine of implied-in-law dedication on which the claim of a public easement is predicated.

■ Dedications may occur pursuant to statute or the common law. (See 26 Cal.Jur.3d (1976) Dedication, § 2.) Here we are concerned with the common law. Doctrinal impediments have barred the application of the common law of prescription to justify the acquisition of a public easement. (See, e.g., Bruce & Ely, The Law of Easements and Licenses in Land (rev. ed. 1995) ¶ 5.09, pp. 5-45 to 5-46.) For this reason in California it is said that "[a] public easement arises only by dedication." (*People v. Sayig* (1951) 101 Cal.App.2d 890, 896 [226 P.2d 702]; see also *Bolger v. Foss* (1884) 65 Cal. 250, 251 [3 P. 871]; *Smith v. Kraintz* (1962) 201 Cal.App.2d 696, 701 [20 Cal.Rptr. 471].)

"Dedication has been defined as an appropriation of land for some public use, made by the fee owner, and accepted by the public. By virtue of this offer which the fee owner has made, he is precluded from reasserting an exclusive right over the land now used for public purposes. American courts have freely applied this common law doctrine, not only to streets, parks, squares, and commons, but to other places subject to public use. California has been no exception to the general approach of wide application of the doctrine." (Gallagher et al., *Implied Dedication: The Imaginary Waves of Gion-Dietz* (1973) 5 Sw. U. L.Rev. 48, 52, fns. omitted (hereafter *Implied Dedication*).)

A common law dedication may be express or implied. Express dedication arises where the owner's intent to dedicate is manifested in the overt acts of the owner, e.g., by execution of a deed. An implied dedication arises when the evidence supports an attribution of intent to dedicate without the presence of such acts. (See 26 Cal.Jur.3d, *supra*, Dedication, § 4; *Implied Dedication, supra*, 5 Sw. U. L.Rev. at p. 53.) A dedication is implied in fact when the period of public use is less than the period for prescription and the acts or omissions of the owner afford an implication of actual consent or acquiescence to dedication. (See, e.g., *Union Transp. Co. v. Sacramento County* (1954) 42 Cal.2d 235, 241 [267 P.2d 10].) A dedication is implied by law when the public use is *adverse* and exceeds the period for prescription. (*Ibid.*)

In *Gion-Dietz, supra*, 2 Cal.3d 29, the California Supreme Court applied the doctrine of implied dedication by law to find public easements of right of way and for recreational uses to two shoreline properties. The opinion identified three significant questions "with respect to proof of dedication by adverse use: (1) When is a public use deemed to be adverse? (2) Must a litigant representing the public prove that the owner did not grant a license to the public? (3) Is there any difference between dedication of shoreline property and other property?" (*Gion-Dietz, supra*, 2 Cal.3d at p. 39.)

As to the first question, the court cautioned that analogies from the law of adverse possession can be misleading and explained the nature of adversity in this context, in pertinent part, as follows. "What must be shown is that persons used the property believing the public had a right to such use. This public use may not be 'adverse' to the interests of the owner in the sense that the word is used in adverse possession cases. If a trial court finds that the public has used land without objection or interference for more than five years, it need not make a separate finding of 'adversity' to support a decision of implied dedication.

"Litigants, therefore, seeking to show that land has been dedicated to the public need only produce evidence that persons have used the land as they would have used public land. If the land involved is a beach or shoreline area, they should show that the land was used as if it were a public recreation area. If a road is involved, the litigants must show that it was used as if it were a public road." (*Gion-Dietz, supra*, 2 Cal.3d at p. 39.)

The second question is whether a presumption arises that public use of unenclosed and uncultivated land is under a license by the fee owner. (*Gion-Dietz, supra*, 2 Cal.3d at p. 40.) The Supreme Court answered as follows: "No reason appears for distinguishing proof of implied dedication

by invoking a presumption of permissive use. The question whether public use of privately owned lands is under a license of the owner is ordinarily one of fact. We will not presume that owners of property today knowingly permit the general public to use their lands and grant a license to the public to do so. For a fee owner to negate a finding of intent to dedicate based on uninterrupted public use for more than five years, therefore, he must either affirmatively prove that he has granted the public a license to use his property or demonstrate that he has made a bona fide attempt to prevent public use." (*Gion-Dietz, supra*, at p. 41.)

In this regard, the court relied on its earlier analysis in *O'Banion v. Borba* (1948) 32 Cal.2d 145, 148-149 [195 P.2d 10]. " 'The preferable view is to treat the case the same as any other, that is, the issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner. There seems to be no apparent reason for discussing the matter from the standpoint of presumptions.' " (*Gion-Dietz, supra*, 2 Cal.3d at pp. 40-41.)

Lastly, the court in *Gion-Dietz* answered, in essence, that there is no difference between dedication of shoreline property and other property. (*Gion-Dietz, supra*, 2 Cal.3d at pp. 41-43.)

B. *A Public Easement Acquired Under Gion-Dietz Was Not Affected by Civil Code Section 1009 Which Prospectively Restricts Such Acquisition*

The *Gion-Dietz* opinion was controversial. (See *Implied Dedication, supra,* 5 Sw. U. L.Rev. at pp. 48-49.) In March 1971, Senate Bill No. 504 (1971 Reg. Sess.) was initially introduced as urgency legislation[2] in response to the controversy. The bill was the vehicle for the enactment of Civil Code section 1009 and the amendment of Civil Code section 813.[3]

Before the amendment, section 813, as enacted in 1963, provided for the recording of a notice of consent to public use for a described purpose by the owner of land. The notice was deemed "evidence that subsequent use of the land for such purpose is permissive and with consent." (Stats. 1963, ch. 735, § 1, p. 1749.) The 1971 amendment provides that recording the prescribed

---

[2]The proposed urgency declaration in the bill, as introduced, is as follows: "Large areas of privately owned property now open to public use may be closed in the forthcoming recreational season unless owners are assured by this act that they will not lose property rights through future public use." In the course of passage the urgency clause was deleted and the legislation allowed to take effect without urgency on March 4, 1972.

[3]References to a section are to the Civil Code unless otherwise indicated.

notice that any use is by permission is conclusive evidence that subsequent use of the land is permissive "for purposes of a finding of implied dedication." (Stats. 1971, ch. 941, § 1, p. 1846.)

The new section 1009 declares that owners of private real property should be encouraged to continue to make their lands available for public use and that such owners were threatened with loss of rights in and impairment of title to their property if they did so. The statute then provides that, notwithstanding lack of a notice pursuant to section 813, public use of private real property after its effective date shall never ripen to confer vested rights to continue such use under the implied dedication doctrine unless (1) a government entity expended public funds to improve or maintain the land for public use or (2) the land lies within 1,000 yards of coastal waters.

▮▮ The Landowners submit "the Legislature abrogated *Gion* prospectively by enacting Civil Code Section 1009." They submit further that "[*Gion*] marks a departure from settled approaches" to the law of dedication, that it was a "troubling" holding, and that we should not "exacerbate and extend [its] malignant effects."

The thrust of these claims is the suggestion that *Gion-Dietz* is a dubious precedent and that we are both free to evade the decision and ought to do so. We are invited to ignore a settled precedent. We decline to do so.

It is accurate to say the enactment of section 1009 and the related amendment of section 813, in large part, abrogates the holding in *Gion-Dietz—prospectively*. However, there is no public policy manifest in this enactment which restricts the application of that holding to claims preceding March 4, 1972. An uncodified section of the enactment explicitly states: "nor shall this act be construed to affect, diminish or extinguish any right or rights vested as of the effective date hereof by reason of express or implied dedication, or otherwise." (Stats. 1971, ch. 941, § 3, p. 1848.) This is consistent with the wholly forward-looking rationale of the enactment, to prevent a possible change in future conduct of owners of real property in restricting access to their land.[4]

Nor can we accept the implication that *Gion-Dietz* is reprehensible as a "departure from settled approaches" to the doctrine of implied dedication.

---

[4]The Landowners submit that recognizing a public easement under *Gion-Dietz* in these circumstances transgresses public policy because it "punishes" public-spirited landowners who grant easements to public entities. Not everyone would view such an outcome, which grants access to the remainder of a recreational trail, as punishment. In any event, to the extent the outcome is viewed unhappily, it must be attributed to the choice made by the Landowners' predecessor in interest to suffer the adverse public user, rather than to the decision to grant the NID easement.

"[O]n the contrary . . . *Gion-Dietz,* far from signaling the momentous 'redefinition of property rights' which defendant would depict, simply represents a restatement and clarification of well-established former law . . . ." (*County of Los Angeles v. Berk* (1980) 26 Cal.3d 201, 213 [161 Cal.Rptr. 742, 605 P.2d 381], fn. omitted.)[5]

The implication that the application of *Gion-Dietz* to a claim of implied dedication of rights-of-way for pedestrian, equestrian, and bicycle travel is an "extension" of the doctrine is also incorrect. Well within the ancient reach of the common law of dedication is the establishment of a public footway. (See Annot., Dedication of Footway by Permissive Use (1920) 7 A.L.R. 125; cf., e.g., *People v. Ocean Shore Railroad* (1948) 32 Cal.2d 406, 415-416 [196 P.2d 570, 6 A.L.R.2d 1179]; see generally *Hallinan v. Committee of Bar Examiners* (1966) 65 Cal.2d 447, 473 [55 Cal.Rptr. 228, 421 P.2d 76] [noting bar applicant's conviction "of the crime of blocking a footpath"].) There is no principled basis for not applying the rule of implied dedication to any "highway," within the generic usage of that term, to all sorts of public ways, e.g., to a bridle way, bicycle path, or any combination of such use as a right-of-way. (See generally *City of Long Beach v. Payne* (1935) 3 Cal.2d 184, 189 [44 P.2d 305].)

## C. *The Evidence Supports the Finding of an Implied Dedication Before March 4, 1972*

That leaves the Landowners with the argument that *Gion-Dietz* cannot warrant a public easement in the circumstances of this case because there is not sufficient evidence to satisfy the *Gion-Dietz* criteria.

The central question concerns "adversity"—whether "persons have used the land as they would have used public land."[6] (*Gion-Dietz, supra,* 2 Cal.3d at p. 39.) *Gion-Dietz* repudiates the view that public use of unenclosed and uncultivated lands is presumed to be permissive rather than pursuant to a

---

[5]Accordingly, we reject the Landowners' argument that the application of *Gion-Dietz* has constitutional takings implications as "a sudden unpredictable change in legal norms governing property rights and public dedication . . . ."

[6]The Landowners also argue that there is no substantial evidence that they are not bona fide purchasers for value and that application of *Gion-Dietz* conflicts with the doctrine that such purchasers should be protected from unrecorded easements. The Landowners argue they had no notice of the public easement because it is unrecorded and no one told Deborah Best there was a recreational easement.

The trial court could reasonably find Best was aware of the antecedent usage by the public that was sufficient to establish the easement against her predecessor in interest and no reason appears why that would not suffice as notice to her as well. Moreover, where the public user suffices for implied dedication, it "must be held to impart notice of its occurrence to the whole world, including the holders of other interests in the property." (*County of Los Angeles v. Berk, supra,* 26 Cal.3d at p. 218.)

claim of public right. That is the critical question of fact, i.e., whether the
use shown to have been made of the property by the public is " 'such that the
trier of fact is justified in inferring an adverse claim and user and imputing
constructive knowledge thereof to the owner.' " (*Id.* at p. 41.)

There was a considerable body of testimony from members of the public
who used the canal side right-of-way that they did so in the belief the public
had a right to do so. The owner of the property during the pertinent period
conceded he was aware of public use of the berm road and that it was his
belief the public had a right to use the trail. While the anecdotal evidence of
such use is inherently difficult to reduce to a precise traffic count, the
testimony of the witnesses of their use and observation of others' use affords
an inference that such use was far from rare; in the words of the trial court
it was "continuous, regular and open use." The level of use was sufficient to
afford unequivocal notice of public use to the owners of the land.

■ The problem of adversity in implied dedication is analogous to the
question, in prescription cases, whether the use in issue should be character-
ized as prescriptive or attributed to neighborly accommodation. (See, e.g.,
*Finley v. Botto* (1958) 161 Cal.App.2d 614, 620 [327 P.2d 55].) The fact
patterns are myriad and the question often imbued with overtones of local
norms, customs, and expectations. That is one reason why such cases, unless
clearly outside the range of discretion, generally warrant deference to the
local finder of fact.

The *Gion-Dietz* opinion plainly contemplates that "adversity" for purposes
of implied dedication may arise as to recreational pedestrians in rural areas.
In addressing the question of negating such a finding by demonstrating a
bona fide attempt to prevent public use the Supreme Court observed:
"Whether an owner's efforts to halt public use are adequate in a particular
case will turn on the means the owner uses in relation to the character of the
property and the extent of public use. Although 'No Trespassing' signs may
be sufficient when only an occasional hiker traverses an isolated property,
the same action cannot reasonably be expected to halt a continuous influx of
beach users to an attractive seashore property." (*Gion-Dietz, supra,* 2 Cal.3d
at p. 41.) The owner would have no occasion to rebut the finding of
"adverse" public use unless that inference were available.

■ The public use shown here significantly exceeds "an occasional
hiker travers[ing] an isolated property."[7] We conclude the trial court did not
abuse its discretion in implicitly finding that the level of use was sufficient

---

[7]We caution that the court's comment concerning an occasional hiker on isolated property
should not be construed as suggesting that any instance of recurrent "public" passage over

to convey to the owner of the land at the pertinent time that it was "adverse" within the meaning of *Gion-Dietz*.

### D. *The Finding of a Public Easement Is Not Contrary to the Law of Easements*

The Landowners contend the trial court erred because, even assuming *Gion-Dietz* is generally applicable to the kind of public user shown in this case, it cannot be applied here in light of the NID easement.

They argue that recognizing a public easement conflicts with the precept that the doctrine of prescription does not apply to a public entity (see, e.g., § 1007).[8] They also argue that such recognition is inappropriate because in light of the NID easement they (or their predecessors in interest) were powerless to prevent the public use in issue. We disagree.

#### 1. *The NID Easement Is Not Incompatible with a Public Easement*

The Landowners claim the public easement is precluded because the nature of the public user necessarily impinges upon the NID easement right. However, they offer no persuasive explanation why the easements are incompatible.

The general rules concerning a multiplicity of easements are summarized in the following passage in *Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983, 133 A.L.R. 1186]: "Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement. . . . It is not necessary for him to make any reservation to protect his interests in the land,

---

private property could qualify as adverse use for purposes of implied dedication. The use must be substantial, diverse, and sufficient, considering all the circumstances, to convey to the owner notice that the public is using the passage as if it had a right so to do. Thus, e.g., a long history of continued passage by a diverse group of occasional hikers across a well defined privately owned trail segment leading to a network of trails, say on a pubic wilderness area, might suffice.

[8]Section 1007 is as follows. "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all, but no possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever dedicated to a public use by a public utility, or dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner thereof."

for what he does not convey, he still retains. . . . Furthermore, since he retains the right to use the land reasonably himself, he retains also the power to transfer these rights to third persons. . . . Thus, in the instant case, the right of the defendant to use the particular land in controversy is derived from the owner of the servient tenements, and whether it is a permissible use is to be determined by whether the owner of the servient tenements could have used the land in that manner. [¶] Whether a particular use of the land by the servient owner, or by someone acting with his authorization, is an unreasonable interference is a question of fact for the jury. . . ." (Citations omitted.)

 It suffices to say the Landowners fail to show that the use of the land in the manner described in the declared public easement is an unreasonable interference with the NID easement.

### 2. *The Public Easement Is Not Barred by Section 1007*

The Landowners argue that regardless of compatibility of the public user with the NID easement, a public easement is nonetheless barred by the doctrine underlying section 1007.

 The basis of that doctrine is " '[t]here can be no adverse holding of such land which will deprive the public of the right thereto, or give title to the adverse claimant, or create a title by virtue of the statute of limitations. The rule is universal in its application to all property set apart or reserved for public use, and the public use for which it is appropriated is immaterial. . . . The public is not to lose its rights through the negligence of its agents, nor because it has not chosen to resist an encroachment by one of its own number, whose duty it was, as much as that of every other citizen, to protect the state in its rights.' " (*People v. Kerber* (1908) 152 Cal. 731, 734 [93 P. 878].)

Since the purpose of the doctrine is to protect a public entity from loss of publicly owned rights through suffering an encroachment, it has no application to the loss of rights of an underlying private owner. (See, e.g., § 3510.)

 Thus, in *Abar v. Rogers* (1972) 23 Cal.App.3d 506 [100 Cal.Rptr. 344], the court affirmed quiet title in adjoining landowners to land that had been dedicated to use as a public street during the period of prescription. " '[T]o constitute adverse possession it is sufficient if the defendant in possession claims the right against all the world, except the' political entity holding the superior right or title. (*McManus v. O'Sullivan* [(1874) 48 Cal. 7,] 15.) [¶] Although we find no California application of this rule to the

precise situation before us, elsewhere it has consistently been applied as against holders of the underlying private title to public streets and highways." (*Abar, supra*, at p. 513.)

The Landowners suggest that *Abar* is incorrectly decided because it failed properly to consider prior case law. They assert that *Abar* failed to consider *Guerra v. Packard* (1965) (1965) 236 Cal.App.2d 272 [46 Cal.Rptr. 25]. In *Guerra* the private landowner defendants against whom prescription was claimed argued that "the State of California was granted an easement or right of way over the Pine Ridge Road and that, therefore, from the time of the grant of such easement in 1940 no prescriptive rights could be asserted in the subject roadway because such rights cannot be asserted against the state once the public easement attached." (*Id.* at pp. 284-285.) The *Guerra* opinion did not examine or contest this assertion; instead it reasoned that the argument required that the interest granted to the state be an easement rather than a license, and, determining that the interest was a license, found the argument went nowhere. (*Id.* at pp. 285-287.)

*Guerra* never considered whether prescriptive rights could be asserted to a right-of-way without being asserted against the state. It never reached a decision on the question whether prescription against the landowner would be barred if the state had an easement, because it decided that was not the case. Accordingly, *Guerra* is not a precedent to which *Abar* should have attended.

The Landowners argue that the *Abar* opinion mischaracterizes *Patton v. City of Los Angeles* (1915) 169 Cal. 521 [147 P. 141]. The pertinent passage is as follows: "We have considered the case of *Patton* v. *City of Los Angeles,* 169 Cal. 521 [147 P. 141], holding (pp. 531-532), 'that possession under adverse claim of title of land devoted to public use at the time, is wholly ineffectual, not only upon the public use or easement, but also upon the title to the soil or land, including the public easement and every subordinate estate, as well.' That case concerned an attempt to quiet title to tidelands on which the plaintiffs for more than five years had been removing and depositing soil. The fee of the tidelands was owned by the City of Los Angeles, and it was held by the city subject to public easements 'for purposes of navigation and fisheries.' The plaintiffs' theory was that of adverse possession of the tideland's bottom only; they insisted that the public right of navigation and fisheries had been and would continue unmolested. They sought a decree that they had acquired by adverse possession of 'the servient estate, the fee subject to the public easements.' (P. 527.)

"The *Patton* v. *City of Los Angeles* court, of course, ruled for the defendant. Obviously the plaintiffs had sought to establish an adverse possession

title to land owned by a public entity, in clear contravention of section 1007 (see fn. 2, *ante*).

"An examination of the many authorities cited and relied upon by *Patton v. City of Los Angeles* indicates, with one apparent exception, attempts to gain adverse possession title to land owned by a municipality or other political entity. The apparent exception is *Southern Pacific Co. v. Hyatt*, 132 Cal. 240 [64 P. 272]; in that case the court held adverse possession did not lie against land *owned* by the railroad, since railroad rights of way are ' "esteemed as public highways, constructed for the advantage of the public." . . .' (P. 241.) Nowhere does *Patton v. City of Los Angeles* suggest that adverse possession does not lie against the private owner of a public street's underlying fee." (*Abar v. Rogers, supra,* 23 Cal.App.3d at pp. 516-517, some italics omitted.)

The Landowners submit that in this passage *Abar* incorrectly limits broadly applicable principles that *Patton* declares to cases where the servient estate is owned by a public entity.[9] Quoting elliptically from *Patton* they argue: " 'Where . . . the hostile possession cannot operate upon the [public entity] easement for the enjoyment of which the surface is necessary . . . it would not occur to the ordinary mind that such possession would affect or divest [the] servient estate.' *Patton,* 169 Cal. at 534."

The *Patton* opinion, from which all the foregoing quotations were taken, is the lead opinion of Justice Shaw, which garnered the adherence of only one other member of the court, Justice Sloss. In his concurring opinion, Justice Angellotti expressly declined to agree that prescription could not occur as to a subordinate estate. (*Patton v. City of Los Angeles,* 169 Cal. at pp. 534-535 (conc. opn. of Angellotti, J.).) Justice Henshaw's concurring opinion, joined in by Justices Melvin and Lorigan, also expressly parted company with Justice Shaw's opinion on this point: "If there be such a divided fee as that which this court has said exists, why should not the right to acquire it be open to every one as is their right to acquire any other property by the same means?" (*Id.* at p. 536 (conc. opn. of Henshaw, J.).) Thus, the sentiments on which the Landowners rely failed to command a majority of the court and cannot be considered a holding of the court.

---

[9] The Landowners also argue that we should follow "*Patton's* logic" because it was applied where the reversionary interest in property was owned privately in *Martin v. City of Stockton* (1919) 39 Cal.App. 552 [179 P. 894]. However, the only reference to *Patton* in *Martin* pertains to the claim against the city. Moreover, the question of application of prescription or dedication to a reversionary interest (see, e.g., § 741) is materially different from the case of the owner of the servient estate, in the case of an easement. A remainderman has no legal capacity to resist or bar the adverse user. As explained, *post,* the owner of the servient estate does have such legal capacity.

On its merits, Justice Shaw's view is persuasive only if the nature of the easement, servient estate, and claimed adverse user are, in his words (which the Landowners omit from their quote), such that "no notice of any claim to the servient estate is brought home to the owner thereof . . . ." (*Patton v. City of Los Angeles, supra,* 169 Cal. at p. 534 (lead opn. of Shaw, J.).) However, under the modern requirements for prescription or where the "adversity" criteria of implied dedication under *Gion-Dietz* are met, that is not the case. Accordingly, we find no persuasive reason in Justice Shaw's opinion to depart from *Abar.*

### 3. There Is No Unfairness in Applying Gion-Dietz

The Landowners' last argument is that the application of the *Gion-Dietz* doctrine is unfair because, in light of the NID easement, their predecessor in interest lacked the ability to prevent the public use.

The Landowners point to *Dieterich Internat. Truck Sales, Inc. v. J. S. & J. Services, Inc.* (1992) 3 Cal.App.4th 1601 [5 Cal.Rptr.2d 388], which holds that a landlord has no cause of action to sue to halt a trespass, hence prescription cannot run against the landlord's reversion. They argue that the situation is analogous to the NID easement in this case. The argument is unpersuasive.

*Dieterich* explains that the landlord has no cause of action to prevent a trespass because, under the law of landlord tenant relations, the landlord surrenders possession, "that stick in the bundle of rights" which is critical. (*Dieterich Internat. Truck Sales, Inc. v. J. S. & J. Services, Inc., supra,* 3 Cal.App.4th at p. 1610.) However, under the law of easements, an easement is a nonpossessory interest. (See, e.g., Rest., Property, § 450, com. b, p. 2903.) The owner of the servient estate retains possession. Just as the owner may make reasonable use notwithstanding the easement and permit others to make such use, the owner has a cause of action to prevent trespass. There is no analogy between *Dieterich* and this case.

The Landowners suggest that even if their predecessors would not have been legally barred from preventing trespass, they would have been prevented from such action as a practical matter because they were required to seek permission from NID to erect gates. The Landowners fail to show that their predecessor in interest was legally required to defer to NID in taking reasonable steps to prevent public use of the NID easement, i.e., that NID had a legal right to prevent every reasonable measure which could have been effective to prevent the adverse public user. Indeed, on the practical plane, the Landowners' predecessor in interest presumably could have obtained the same agreement from NID to install the gates in issue before the lapse of the prescriptive period.

For all the foregoing reasons, we conclude the Landowners have failed to show any error which impugns the judgment.

## II

■ Friends of the Trails contends the trial court erred in failing to include in the judgment a description of NID's easement rights and to grant injunctive relief against NID. They argue that they are entitled to such a declaration and ancillary injunctive relief addressed to NID and that the trial court compounded its error in stating that no relief was granted against NID. The arguments are not persuasive and the contention of error has no merit.

Friends of the Trails, citing *Peterson v. Gibbs* (1905) 147 Cal. 1, 5 [81 P. 121], argues that the purpose of a quiet title action is to determine the interest of any adverse claim to the land in controversy by a defendant and that the court must declare and define the interest of a defendant. We have no quarrel with the quote from *Peterson*; however, it only pertains to a defendant who asserts an adverse claim.

The fundamental basis of declaratory relief is an actual, present controversy. (See, e.g., 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 817, pp. 273-274.) Analogously, there is no entitlement to a judgment quieting title insofar as there is no antagonistic property interest. (See, e.g., *Martin v. City of Stockton, supra*, 39 Cal.App. at p. 559.) As NID notes, Friends of the Trails repeatedly disclaimed adversity with the NID easement. The explicit written description of the NID easement is a matter of public record, and there was no controversy concerning that description nor any claim of an antagonistic property interest concerning the NID easement proffered by Friends of the Trials. Accordingly, the trial court did not err in declining to include, i.e., reiterate, the NID easement description in the judgment.

Friends of the Trails submits the judgment should have enjoined NID from interference with the public easement declared. They argue that such an injunction is appropriate even when a defendant disclaims an intent to interfere in the future, under the reasoning of *Empire Star Mines Co. v. Butler* (1944) 62 Cal.App.2d 466, 530 [145 P.2d 49]. However, in that case the party enjoined had committed tortious encroachments in the past and all the opinion connotes is that the court is not constrained to accept a disclaimer of intention to repeat such misconduct. Moreover, here the complaint of Friends of the Trails contains no count nor any prayer seeking injunctive relief against NID, nor is there any indication that any conduct by NID in derogation of the judgment is likely.

Lastly, Friends of the Trails argues that the trial court erred in including in the judgment the statement that no relief was being granted in its favor against NID. It submits this was error because it violates Code of Civil Procedure section 764.030.[10] The statute provides that judgment in a quiet title action is binding and conclusive on all persons who were parties to the action and who have any claim to the property.

We discern no conflict between the judgment and the statute. The judgment is binding on NID. It is precluded from maintaining there is no public easement as described. However, the trial court was permitted to say that no relief was being awarded in favor of Friends of the Trails against NID, i.e., it was denying the request that the judgment include a description of the NID easement and injunctive relief addressed to NID.

The trial court did not err in any of the respects contended by Friends of the Trails.

III

*The Attorney's Fees Award*

The Landowners and NID contend the trial court erred in awarding attorney's fees against them under Code of Civil Procedure section 1021.5; NID also contends that the trial court erred in awarding costs of suit against it. The Landowners and NID argue that the judgment fails to warrant an attorney's fees award because it does not advance an important right affecting the public interest or confer a significant benefit on the public. NID argues that the award against it is improper because Friends of the Trails is not a "successful party" as to it and, in any event, the trial court erred in failing to apportion the attorney's fees award and in awarding costs against it, since it was a prevailing party. The arguments are not persuasive and the contentions of error are not meritorious.

---

[10]Code of Civil Procedure section 764.030 is as follows.

"The judgment in the action is binding and conclusive on all of the following persons, regardless of any legal disability:

"(a) All persons known and unknown who were parties to the action and who have any claim to the property, whether present or future, vested or contingent, legal or equitable, several or undivided.

"(b) Except as provided in Section 764.045, all persons who were not parties to the action and who have any claim to the property which was not of record at the time the lis pendens was filed or, if none was filed, at the time the judgment was recorded."

## A.

█ Code of Civil Procedure section 1021.5[11] requires that an award be predicated upon "the enforcement of an important right affecting the public interest . . . ." The right in issue can be predicated on common law. (See, e.g., Pearl, Cal. Attorney Fee Awards (2d ed. 1999) § 4.19, p. 4-19 (hereafter Pearl.) "When other statutory criteria are satisfied, the section explicitly authorizes such award 'in any action which has resulted in the enforcement of an important right affecting the public interest' . . . regardless of its source—constitutional, statutory *or other*." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 925 [154 Cal.Rptr. 503, 593 P.2d 200], italics added, original italics deleted.)

The criterion of an "important" right requires discrimination, the strength or importance to society of the right must be apprised and the nature of the right in issue must realistically assessed. (See, e.g., *Woodland Hills Residents Assn., Inc. v. City Council, supra*, 23 Cal.3d at p. 935; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1304 [255 Cal.Rptr. 704].) █ Here the right in issue, realistically assessed, is the right to public ownership of public property, the easement in issue. That is an important public right.

The Landowners argue that the public right enforced by the judgment cannot be viewed as important because the judgment is at variance with the will of the Legislature because the Legislature "*abrogated Gion* prospectively." For the reasons already given, this characterization of the Legislature's response to *Gion-Dietz* is incorrect.

NID submits that there are indications of public policy in two other statutes which bear adversely on a conclusion that the right in issue is an "important" one. NID first notes Code of Civil Procedure section 731.5 provides that the prevailing party in an action to enjoin closure of a "public trail," shall be entitled to recover reasonable attorney's fees, ·but defines "public trail" to include only trails in which the purported right is "established pursuant to a recorded document." NID suggests this manifests a · Legislative determination that attorney's fees awards should not be available where closure of public access to a trail is enjoined on a legal theory of implied dedication.

---

[11]In pertinent part, Code of Civil Procedure section 1021.5 is as follows: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The negative implication, that the Legislature decided that attorney's fees should never be available where public access to a trail is successfully predicated on a theory of implied dedication, is unwarranted. A lawmaker could distinguish between actions predicated on the two theories for reasons which do not support the implication. An action founded on an express dedication theory would be, generally speaking, highly likely to succeed. Hence, the plaintiff acting on behalf of the public would be highly likely to succeed and also be undeterred by the prospect of an adverse attorney's fees award. However, implied dedication is inherently more chancy, and the prospect of an adverse award could deter potential plaintiffs. Accordingly, the lawgiver could decide that in cases predicated on implied dedication the plaintiffs should not be burdened with that prospect, but be induced by the prospect of a potential award under Code of Civil Procedure section 1021.5, if they met the criteria for such a selective attorney's fees award.

NID's second candidate is Health and Safety Code sections 115825 and 115835. Section 115825 declares in pertinent part: "the policy of this state [is] that multiple use should be made of all public water within the state . . . ." Section 115835, subdivision (c), excludes from the definition of reservoir open to recreational use "ditches, canals, or any similar type of water distributing facility." NID suggests this shows that public access to such a watercourse cannot be an important public right. This implication is farfetched. The failure to include all such waterways within the generic declaration of availability to multiple, including recreational, use has no bearing upon the importance of a right of continued public access to one such waterway suitable for a recreational use and to which such a right already pertains.

For all the foregoing reasons, we conclude that the trial court did not err in concluding that the right in issue was sufficiently important to warrant an award of attorney's fees under Code of Civil Procedure section 1021.5.

## B.

 Code of Civil Procedure section 1021.5 also requires that "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons . . . ." The Landowners and NID argue that the trial court erred because regardless of the importance vel non of the right of public access, the vindication of that right in this case did not confer a significant public benefit. They submit that the extent of the vindication in this case is opening a "mere 240 feet of a rural ditch berm" or a "240-foot public easement across a single lot." The arguments are unpersuasive.

A trial court should: "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills Residents Assn., Inc. v. City Council, supra*, 23 Cal.3d at pp. 939-940.) As a chain is only as strong as its weakest link, the measure of the benefit of maintaining public access to a trail segment is, obviously, far more than the mere segment viewed in isolation. NID submits that the judgment does not assure access because the other landowners were not joined and are not bound. However, that does not gainsay a strong deterrent effect on other landowners, if any, who would have been inclined to block public access to other trail segments. We discern no abuse of discretion in the determination that the benefit conferred here is significant enough to warrant an award under Code of Civil Procedure section 1021.5.

## C.

 NID argues that the award against it is improper because Friends of the Trails is not a "successful party" as to NID. Code of Civil Procedure section 1021.5 authorizes an "award of attorneys' fees to a successful party against one or more opposing parties." NID argues that to warrant an award against an opposing party the party awarded fees must be a successful party as to that opposing party (see *Urbaniak v. Newton* (1993) 19 Cal.App.4th 1837, 1842-1843 [24 Cal.Rptr.2d 333]) and the minimal criterion for success is some change in the opposing defendant's conduct. NID argues that since no relief was awarded against it, Friends of the Trails does not satisfy this criterion. The argument is unpersuasive.

The California Supreme Court addressed the meaning of "successful" in Code of Civil Procedure section 1021.5 as follows:

"[C]ommon sense dictates that the determination of success under section 1021.5 must depend on more than mere appearance. As we said in *Woodland Hills*, the trial court must 'realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right . . . .' (*Id.*, at p. 938.) [¶] The rule followed by most federal courts construing 'prevailing party' under the Civil Rights Attorney's Fees Awards Act, is that the inquiry as to a party's success must be a pragmatic one that may range outside the merits of the underlying dispute. 'It's initial focus might well be on establishing the precise factual/legal condition that the fee claimant has sought to change or affect . . . . With this condition taken as a benchmark, inquiry may then turn to whether as a quite practical matter the outcome, in whatever form it is realized, is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which

does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.' . . .

"The critical fact is the impact of the action, not the manner of its resolution. If the impact has been the 'enforcement of an important right affecting the public interest' and a consequent conferral of a 'significant benefit on the general public or a large class of persons' a section 1021.5 award is not barred because the case was won on a preliminary issue . . . or because it was settled before trial. . . . As Congress seems to have reasoned in enacting the Fees Act: 'A "prevailing party" should not be penalized for seeking an out of court settlement, thus helping to lessen docket congestion. Similarly, after a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award fees even though it might conclude, as a matter of equity, that no formal relief . . . is needed.' . . . " (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685-686 [186 Cal.Rptr. 589, 652 P.2d 437], citations and fns. omitted.)

In *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1103 [240 Cal.Rptr. 569, 742 P.2d 1290], the Supreme Court, applying this reasoning in *Folsom*, awarded fees under Code of Civil Procedure section 1021.5, even though no relief was awarded the plaintiffs in the case at bar, on the grounds that they had vindicated the principle on which the action was brought. The *Harbor* opinion implies that clarification afforded by the decision would likely avoid unlawful acts in the future.

NID concedes that Friends of the Trails was "successful," but argues that was only as to the Landowners. Friends of the Trails and the Landowners argue that the characterization applies also to NID. They note that NID was not a passive bystander in the litigation, limiting itself to defense of its own easement right, but rather affirmatively and vigorously opposed the declaration of a public easement. The Landowners submit that NID's policy with respect to authorizing gates on the easement road will have to change in view of the judgment.

The purpose of Code of Civil Procedure section 1021.5 is to encourage suits which meet its criteria. (See, e.g., *Woodland Hills Residents Assn., Inc. v. City Council, supra*, 23 Cal.3d at p. 933.) Interpreting "a successful party against one or more opposing parties" to apply to NID in these circumstances advances that purpose. The alternative reading suggested by NID would require a potential plaintiff to face expensive litigation of the merits of the public right claim against an opponent with great resources while having no assurance that the same resources that had to be overcome would be available for recompense. Moreover, it would inequitably saddle other

defendants, such as the Landowners, with the sole liability for the successful plaintiffs' attorney's fees even though they were incurred entirely because of litigation tactics and decisions of another "opposing party." The trial court did not err in making an attorney's fees award against NID. (Cf. *Charles v. Daley* (7th Cir. 1988) 846 F.2d 1057, 1064.)

## D.

 NID argues that the trial court erred in failing to apportion the attorney's fees award pursuant to its request. NID submits that failing to apportion the award in this case is an abuse of discretion because its involvement in blocking the trail in issue was passive, hence in its view it was less culpable than the Landowners. The argument is unpersuasive.

NID cites California cases which have upheld decisions by trial courts to apportion between defendants liability for attorney's fees awards. (See, e.g., cases collected in Pearl, *supra*, § 3.12, pp. 3-10 to 3-12, cf. *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1672 [39 Cal.Rptr.2d 189] [no error in failing to apportion without request in the trial court].) The theory backing an apportionment under Code of Civil Procedure section 1021.5 is importation of earlier federal law precedents.

*Washburn v. City of Berkeley* (1987) 195 Cal.App.3d 578, 592 [240 Cal.Rptr. 784] asserts: "Neither party cites a California case in which the court has calculated a fee award as did the trial court in this case. As Rabkin points out, however, federal courts have adopted various methods of apportioning or allocating fees among defendants in cases involving fee awards pursuant to 42 United States Code section 1988, and this court may look to federal law in applying [Code of Civil Procedure] section 1021.5. In *Grendel's Den, Inc. v. Larkin* (1st Cir. 1984) 749 F.2d 945 the court instructed, '[A] number of theories for apportioning fees have been advanced . . . . Among them are the simplest approach of dividing the award equally among the defendants . . . , and the more sophisticated approaches of apportionment by degree of each defendant's liability . . . , and apportionment by relative time spent litigating against each defendant. . . . Each of these theories may be more or less valid in a given case.' (*Id.*, at pp. 959-960.)"

At the outset we note that there are two aspects of such an "apportionment." One is liability between the different opposing parties and the successful party. The other is responsibility for contribution or indemnity between opposing parties. As to the first aspect, we disavow the notion that,

as a general matter,[12] opposing parties are entitled to an apportionment of their liability under Code of Civil Procedure section 1021.5 as to the successful party.

An award of attorney's fees under Code of Civil Procedure section 1021.5 is an obligation. When an obligation is imposed on several persons it is presumed to be joint. (§ 1431.) Treating the Code of Civil Procedure section 1021.5 obligation of more than one opposing parties as joint is consistent with the purposes of that statute. If the obligation is apportioned in the sense that it is not joint the successful party faces greater difficulty in collection of the judgment for attorney's fees and some of the attorney's fees will not be recoverable if any opposing party is insolvent.

That leaves apportionment as between the opposing parties. NID cites no case law in which it has been held that the trial court has abused its discretion in failing to make an apportion upon request. (See *Corder v. Gates* (9th Cir. 1991) 947 F.2d 374, 383 [under federal law refusal to make an apportionment no abuse of discretion].) As a general rule, the cause of action, if any, for contribution between parties to a joint obligation arises when one has satisfied more than its share. (See § 1432; Code Civ. Proc., §§ 882, 883.)

Conceivably, the determination of rights between such parties would be amenable to declaratory relief before such a satisfaction. A trial court which renders a legally correct declaration of apportionment in the context of a motion for a fee award under Code of Civil Procedure section 1021.5 does not cognizably err, at least without objection that the matter is premature or not in issue. However, a trial court which declines so to do in a case such as this also does not err, since the matter is not in issue.[13]

E.

NID lastly argues that the trial court erred in awarding costs against it, because it was the "prevailing party" under Code of Civil Procedure section 1032, subdivision (a)(4).[14] NID asserts that it is within the statutory phrase "a defendant as against those plaintiffs who do not recover any relief

---

[12]Special circumstances might warrant such apportionment. For example, circumstances which would warrant a reduction of the fee award as to the successful party but only applicable to some opposing parties could warrant a departure from joint liability.

[13]We imply no view on the question whether the matter could properly be placed in issue by the filing of a cross-complaint. That point is not presented in this case, nor is it briefed.

[14]"(4) 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other

against that defendant." Friends of the Trails replies that notwithstanding that phrase, this is a case where "any party recovers other than monetary relief" hence, "the 'prevailing party' shall be as determined by the court" and the court did not err in determining that they were the prevailing party. Friends of the Trails has the more persuasive argument and we will conclude the trial court did not err in the award of costs against NID.

NID argues that this must be deemed a case where it is a defendant as against whom the plaintiffs did not recover any relief because the judgment recital: "No relief is granted in favor of plaintiffs against defendant [NID]." As explained earlier, the meaning of that recital is that the court was rejecting the Friends of the Trails' request for affirmative relief against NID, i.e., reiterating the NID easement or granting injunctive relief. Notwithstanding the recital, in the circumstances of this case, the court could find that relief had been granted in favor of Friends of the Trails against NID on the quiet title claim. (See Code Civ. Proc., § 761.030, subd. (b) ["If the defendant disclaims in the answer any claim, or suffers judgment to be taken without answer, the plaintiff shall not recover costs"]; see generally *Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 [39 Cal.Rptr.2d 824, 891 P.2d 804] ["We agree that *in determining litigation success,* courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party [under Civ. Code, § 1717] if it is clear that the party has otherwise achieved its main litigation objective." (Original italics.).].)

We conclude that the trial court did not err in determining that this was a case where Friends of the Trails recovered "other than monetary relief" as to NID and in awarding costs against NID.

### DISPOSITION

The judgment and orders awarding costs and attorney's fees are affirmed.

Sims, J., and Davis, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied June 14, 2000.

---

than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (Code Civ. Proc., § 1032, subd. (a)(4).)