[No. A052111. First Dist., Div. One Feb. 28, 1992.]

THOMAS L. BESS et al., Plaintiffs, Cross-defendants and Appellants, v. COUNTY OF HUMBOLDT et al., Defendants, Cross-complainants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rules 976 and 976.1 of the California Rules of Court, this opinion is certified for publication, except for part IV.

## COUNSEL

Mathews & Kluck, Francis B. Mathew and Thomas B. Mathews for Plaintiffs, Cross-defendants and Appellants.

Daniel E. Lungren, Attorney General, Richard M. Frank, Acting Assistant Attorney General, and Robert G. Collins, Deputy Attorney General, for Defendants, Cross-complainants and Respondents.

## OPINION

**STEIN, J.**—The instant action involves the rights of the public (1) to use the Van Duzen River as it flows through property owned by Thomas L. and Carol Bess (the Besses), and (2) to obtain access to the river across the Besses' property. The trial court found that the Van Duzen River is navigable and thus that "the State owns in fee simple, in trust for the public, the bed of the Van Duzen River to the river's ordinary low water marks." The court further found that the "State also owns, in trust for the public, an easement for navigation, commerce, fishing and recreation over the bed of Van Duzen River to its ordinary high water marks." Finally, the court determined that "The state also owns, in trust for the public, a road easement across the subject property. This road easement, generally referred to as 'Odd Fellows Park Road,' arose by virtue of an implied dedication through public use. . . . This road easement may be used by the public for the purpose of gaining access to the Van Duzen River between its ordinary high water marks for swimming, fishing, navigational and recreational purposes."

The Besses appeal.

### FACTS

In the late 1960's the Besses purchased several parcels of land in Humboldt County. The Van Duzen River runs through that property. A road,

known as the "Odd Fellows Park Road," runs from the nearby Highway 36, across the Besses' land to the river, and then, more or less, along the river and to a parcel of property purchased by the Lodges of the Independent Order of Odd Fellows in 1928. From that time forward the road was used both by members of the lodge to gain access to the Odd Fellows property, and by the public, generally, to gain access to the river. The Besses' escrow instructions specified that their purchases of the parcels of property were subject to the rights of the State of California in the Van Duzen River, and of the public to use the Odd Fellows Road. Humboldt County recognized the Odd Fellows Park Road as a part of the county road system, certified to the state that it had an obligation to maintain the road and, in fact, performed routine maintenance on it over the years. After flooding washed part of the riverbank away in the mid-1960's, the county built a ramp from the road to the riverside to ensure that public access to the river was maintained. Persons owning property crossed by the Odd Fellows Park Road expected the county to maintain the road.

The Van Duzen River changed course from time to time—apparently from both natural and man-created causes.[1] It appears that the river in fact covered the Odd Fellows property for some period of time, causing the lodge to abandon the property forever. By the time of trial, however, the river had receded. Notwithstanding the changes in the river course, the public continued to use the road as a means of access to the river, either parking on the road itself, or driving off the road (apparently by means of the county-constructed ramp) onto a gravel river bar and along and across that bar to the water. A few persons sought the Besses' permission to use the road. Many others, however, did not, believing that the public had the right to use the road.

No objection was made to the public's presence for nearly 60 years. In the mid-1980's, however, the Besses began to restrict the public's use of the road, telling people that it was not a public road and posting "No Trespassing" signs. The Besses finally filed a complaint against several specific individuals and also against Humboldt County, seeking to prevent any further "trespass" on their land. The County of Humboldt and the State of California cross-complained to establish the rights of the public in the road, river and riverbank. The court, as noted, found in favor of the public.

---

[1] There was evidence that the Besses built a "wing dam" and took other measures designed to affect the flow of the river, and that they subsequently were enjoined from such activities without first having secured a permit.

DISCUSSION

I.

*The Public Has the Right to Use the Van Duzen River and Abutting Land up to the High-water Mark for Navigation, Fishing and Recreation*

█ It is well settled that the state has fee title to such portion of any navigational river within its boundaries as lies beneath the low-water mark. It is equally well established that although abutting landowners own the land between the high- and low-water marks, their ownership is subject to a public trust for purposes such as navigation, fishing, and recreation. (Civ. Code, § 830; *State of California* v. *Superior Court (Lyon)* (1981) 29 Cal.3d 210, 226-233 [172 Cal.Rptr. 696, 625 P.2d 239].) There was substantial evidence that the Van Duzen River was navigable, and the Besses, in fact, so conceded. The public, therefore, has the right to use the river, and the river-bed up to the high-water mark, for navigational, fishing, recreational, and other permitted purposes. ██ ██ It is unclear if the Besses claim otherwise, but to the extent that they argue that the public may not use the riverbed—up to the high-water mark—for such purposes, such argument lacks merit.[2]

II.

*The Public Has the Right to Use the Odd Fellows Park Road as a Means of Access to the Van Duzen River*

█ The Besses, arguing that there had been an insufficient showing that the public's use of the Odd Fellows Park Road was hostile and adverse to

---

[2]The Besses, in their statement of facts, make a number of assertions about navigability (that the river is navigable only at certain times of the year, that navigability is a question of fact, etc.) but, as they essentially concede that the Van Duzen River is in fact navigable, it is unclear what, if any, argument is being advanced. There is no authority, or at least none cited to us, for the proposition a river must be designated "non-navigable" because it may be navigated only seasonally. There is, however, authority to the contrary. (E.g., *State of Or., etc.* v. *Riverfront Protection Ass'n* (9th Cir. 1982) 672 F.2d 792, 795; *State of Alaska* v. *U.S.* (D.Alaska 1987) 662 F.Supp. 455, 468, fn. 13.) The high-water mark does not vary with the season, but is defined as the place where the riverbed ends and the riverbank begins. "This method involves examining the riverbank to find the highest point where the water's flows have prevented the growth of vegetation. [Citation.]" (*Fogerty* v. *State of California* (1986) 187 Cal.App.3d 224, 241, fn. 12 [231 Cal.Rptr. 810]; and see, also, *Lyon* v. *Western Title Ins. Co.* (1986) 178 Cal.App.3d 1191, 1204 [224 Cal.Rptr. 385].)

their own rights, contend that the state failed to establish that the public had obtained a "prescriptive easement" over their property and to the high-water mark of the Van Duzen River. The contention is misleading because the state was not required to prove the existence of a prescriptive easement. Rather, it needed to prove only that the road had been dedicated for public use. ■ As relevant here, a finding of public dedication required a showing that the public had used the land for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone. (*Gion* v. *City of Santa Cruz* (1970) 2 Cal.3d 29, 38 [84 Cal.Rptr. 162, 465 P.2d 50]; *Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, 240 [267 P.2d 10]; *Hare* v. *Craig* (1929) 206 Cal. 753, 757 [276 P. 336].)[3] "[T]he question is whether the public has engaged in 'long-continued adverse use' of the land sufficient to raise the 'conclusive and undisputable presumption of knowledge and acquiescence, while at the same time it negatives the idea of a mere license.' [Citations.]" (*Gion* v. *City of Santa Cruz, supra,* 2 Cal.3d at p. 38.) ■ As emphasized by the court in *Gion,* the showing necessary for a finding of dedication is not the same as that required for a finding of adverse possession or prescription: "What must be shown is that persons used the property believing the public had a right to such use. This public use may not be 'adverse' to the interests of the owner in the sense that the word is used in adverse possession cases. If a trial court finds that the public has used land without objection or interference for more than five years, it need not make a separate finding of 'adversity' to support a decision of implied dedication. [¶] Litigants, therefore, seeking to show that land has been dedicated to the public need only produce evidence that persons have used the land as they would have used public land. If the land involved is a beach or shoreline area, they should show that the land was used as if it were a public recreation area. If a road is involved, the litigants must show that it was used as if it were a public road. Evidence that the users looked to a governmental agency for maintenance of the land is significant in establishing an implied dedication to the public." (*Id.* at p. 39.)

■ The evidence in the present case established that various members of the public had used Odd Fellows Park Road as a means of access to the Van Duzen River since the 1920's, that there had been no objection to that use until the 1980's, and that many of those using the road believed it to be a public road. Humboldt County, a public agency, performed routine

---

[3]These rules have been altered by statute. Thus, Civil Code sections 813 and 1009 now provide, essentially, that an implied dedication does not arise simply because of permissive use. These statutes, however, are to be applied only prospectively and cannot affect any rights which vested prior to 1971. (Stats. 1971, ch. 941, § 3, p. 1848.) The rights at issue here vested in the 1930's.

maintenance on the road over the years and was considered by relevant landowners to be responsible for road maintenance. There is no question but that the trial court's finding of public dedication was correct.

We see no relevance to the argument that the road originally was created for access to the Odd Fellows Park by members of the Lodges of the Independent Order of Odd Fellows. Nor is it relevant, as the Besses argue, that "[e]vidence of an intention to dedicate land to one public use does not imply an intention to dedicate it to an entirely different use." As made clear by the court in *Gion*, the *landowner's* intention is not relevant where the issue is, as here, whether there has been an implied-at-law dedication. The issue is whether the public used the road as if it were a public road. (See also, *Hays* v. *Vanek* (1989) 217 Cal.App.3d 271, 281 [266 Cal.Rptr. 856].)

*California etc. Co.* v. *Union etc. Co.* (1899) 126 Cal. 433, cited here by the Besses, does not hold otherwise. The court there held no more than that the *express* dedication of land for use as a public highway does not alone establish dedication for use of the land for a landing and warves. (*Id.* at p. 437.) Here, there was an implied-at-law dedication of land for access to the river. And to the extent that *Manhattan Beach* v. *Cortelyou* (1938) 10 Cal.2d 653, 668 [76 P.2d 483] (cited here by the Besses), holds that dedication cannot be predicated on nothing more than the landowner's failure to object, that holding was expressly disapproved by the court in *Gion* v. *City of Santa Cruz, supra,* 2 Cal.3d at page 40, including footnote 2. Finally, that the use of the road may have been only seasonal is irrelevant. " '[T]he thing of significance is that whoever wanted to use [the land] did so . . . when they wished to do so without asking permission and without protest from the land owners.' [Citation.]" (*Id.* at p. 40.)

III.

*The Right of the Public to Use the Odd Fellows Park Road as a Means of Access to the River Was Not Lost Simply Because the River at One Time Covered Part of the Road*

The Besses find significance in the fact that at some time or times the Van Duzen River covered both the Odd Fellows Park Road and the property owned by the Lodges of the Independent Order of Odd Fellows. They take the position that once the roadway was covered, the right of the public in it was extinguished and that the public therefore had no rights in the road site after the river retreated.

Civil Code section 1014, however, specifically provides: "Where, from natural causes, land forms by imperceptible degrees upon the bank of a river

or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, *subject to any existing right of way over the bank.*" (Italics added.) The logic of this rule is obvious and was recognized by the court in the only California case to consider the subject. In *Humboldt County* v. *Van Duzer* (1920) 48 Cal.App. 640, 643 [192 P. 192], the court, finding that the rights of the public in a dedicated road leading to a ferry landing followed the landing as it moved with the changing course of the river: "The law of accretion would apply to the county's property [i.e., to the road] as well as to the defendants." As the state here points out, such a rule has been recognized in other jurisdictions. (E.g., *Elliot* v. *Atlantic City* (Cir.Ct., D.N.J. 1907) 149 Fed.Rptr. 849, 853; *Matcha* v. *Mattox on Behalf of People* (1986) 711 S.W.2d 95, 99-100.) We expressly adopt it here. A right-of-way to a river extends to the river throughout any changes in the river's course. The alluvial rights of any landowner are subject to that right-of-way.

*Naylor* v. *Cox* (1892) 114 Mo. 232 [21 S.W. 589], cited by the Besses, is not on point. The court in that case simply recognized the same basic rule codified in California by Civil Code section 1014; i.e., that a person owning the bank of a river acquires land gradually added to that bank through alluvion. It is irrelevant that, prior to the change in the river's course, that same land belonged to someone else. Where a river moves gradually in one direction, covering land as it moves and later uncovering it, the owner of one bank of the river may end up owning what once was the other bank of the river. We fail to see how that case has any bearing on the issue here. Rather, the public right of way, like the alluvial rights of a landowner, extends to the river irrespective of the historical ownership of the land covered by the right-of-way.

IV.

*The Court Properly Dismissed the Action Against the Individual Ralph Franceschi**

. . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1544,

## V.

### CONCLUSION

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied March 30, 1992.