Filed 10/31/22 Semon v. County of Colusa CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| WILL SEMON, | C094475 |
| Plaintiff and Appellant, | (Super. Ct. No. CV24391) |
| v. | |
| COUNTY OF COLUSA, | |
| Defendant and Respondent. | |

Twenty-six years after discovering that a roadway deviates from an existing easement and encroaches onto his property, plaintiff Will Semon sued the County of Colusa (County) in an effort to realign the roadway. The trial court granted County's motion for summary judgment finding that Semon's claims were barred by the statute of limitations and that County had a vested right of public use in the existing roadway. Semon appeals that ruling, arguing that, due to County's continuous trespass, his action is not time-barred. He further argues that the trial court erred in rejecting admissible evidence regarding the history of the easement and roadway and erred in granting summary judgment in light of the existence of a material fact with respect to whether

1

County's use of the encroaching portion of the roadway was with Semon's consent. We conclude that there exist triable issues of material fact which prevent entry of summary judgment. Accordingly, we reverse the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Property*

In 1917, County created the Cherry Ranch subdivision, which includes a parcel known as Lot No. 9 and an adjacent parcel known as Lot B. A roadway lies in Lot B, and is known as "Wisconsin Avenue." At some point in time, someone laid "chip seal"[1] on a portion of "Wisconsin Avenue" which later became the roadway used by vehicles. However, the chip seal layer was not centered within the boundaries of "Wisconsin Avenue" as the avenue is described in official documents. Part of the chip seal, and thus part of the roadway, was laid on a portion of Lot No. 9.[2] It is this portion of roadway that is the subject of dispute in this case.

In 1992, Semon purchased Lot No. 9; his residence is on "Wisconsin Avenue." He recorded the deed to the property in January 1993. In early 1993, Semon noticed that part of the chip sealed portion of the roadway encroached on his property. The encroaching portion of the chip sealed roadway did not show up on the title report for Lot No. 9.

---

[1] According to County, chip seal is a two-step process which includes an application of an emulsion and then a layer of crushed rock to a compacted aggregate surface. Over time, it can become a hard compact surface.

[2] We distinguish "Wisconsin Avenue" as it is described in official documents from the actual roadway created by the chip seal layer, as the roadway lies on a portion of "Wisconsin Avenue" and also on a portion of Lot No. 9. As explained *infra*, there is no evidence that the labels may be used interchangeably.

Semon claims that in 1993, he had a conversation with the previous owner of Lot No. 9, Kenneth Rominger, about the property.[3] Rominger stated that prior to, and through most of the 1960's, the roadway was a dirt tractor trail, which he used for farming operations. In 1960, Rominger granted County a 20-foot-wide expansion to an existing easement, and told Semon it was meant to be used for "roadway purposes."[4] Rominger told Semon that in the early 1960's, Rominger had a conversation with County to discuss whether County would build and lay chip seal onto the easement. At that time, County represented to Rominger that County did not have funding or the need to do so because there was no need for public use in the area. In the late 1960's, Rominger had another conversation with County about the roadway, after which County told Rominger that he could personally lay chip seal over the easement. Rominger further told Semon that County gave him permission because there was no public use of the road, and Rominger was going to lay the chip seal at his own personal expense. However, Rominger said, County instructed that he lay the chip seal outside of the easement at the southern end so that, in the future, the final road could be constructed by County in proper alignment with the easement. Rominger told Semon that he laid the chip seal for the roadway in compliance with County's instruction and although he allowed County to use the newly surfaced area, there was no public use of the roadway until after development occurred on this area of the roadway. In 1977, the first residence on the roadway was constructed.

---

[3] The trial court excluded Rominger's statements as hearsay; we include them to provide background for the trial court's ruling on the motion for summary judgment and the issues on appeal.

[4] County does not dispute that Rominger granted County an easement, separate and apart from any other property rights County held in the existing road. The parties agree that this easement is not the roadway that is the subject of this matter and is thus not relevant to any issue in this case.

In January 1993, Semon contacted County and requested realignment of the roadway. The public works director responded via letter, indicating it was his "desire" to realign the roadway when financially feasible but, at "the present time, there are no plans to realign the existing road to fall within the county road right of way."[5] Semon asserts that he "gave permission and consented to the County's encroachment and use of the portion of [his property] and took no active steps to prevent and remove them because they promised re-alignment once budgeted." He says he repeated his consent to a County representative in 1997, when he told the District 1 supervisor that County's use of the road is "ok with him but that it just needs to be realigned within it[s] Easement boundaries."

Between 1993 and 2008, Semon repeatedly contacted County to check on the status of the realignment. Needless to say, the road was never realigned.

In July 2008, County informed Semon via letter that County had a prescriptive right to the roadway. In October 2008, county counsel sent Semon a letter that stated, in part: "Everyone has agreed . . . that [the roadway's] current location deviates from the deeded easement" but that "County has obtained a prescriptive easement to maintain the road for the benefit of the public in perpetuity in its present location. It is the County's intention to continue maintaining the road at its present location into the foreseeable future." This letter also explicitly stated that reconstruction and/or relocation of the roadway is "not anticipated now or at any time in the foreseeable future"; it is the County's intent to continue to maintain the road in its current location.

---

[5] The letter acknowledges a deviation from the established right of way. The trial court sustained County's objection to this evidence as inadmissible hearsay pursuant to Evidence Code section 1200. We note the contents for purposes of clarity; we do not rely on the truth of the matter asserted in the statement.

4

Semon alleges that he contacted County twice a year between 2008 and 2017 to determine whether the road realignment had been placed in the budget. County does not dispute that Semon repeatedly contacted County regarding the realignment. In September 2017, Semon spoke with the assistant public works director, who told him that the road was not going to be realigned. A week later, the public works director told Semon, "sorry but the issue is dead as of [the] 2008 letter from County Counsel."

In April 2018, Semon's attorneys contacted County, alleged County was now trespassing and demanded the realignment of the road.

B. *Legal Action*

In May 2019, Semon filed a complaint against County. County then filed a demurrer, which the trial court sustained with leave to amend. On October 23, 2019, Semon filed a first amended complaint seeking declaratory relief and alleging the following causes of action: quiet title, continuing trespass, and ejectment. On December 31, 2019, the trial court overruled County's demurrer to the first amended complaint and ordered County to file an answer.

County denied the allegations of the complaint as a whole, and specifically stated that it lacked any information or belief "as to whether 'Rominger laid the asphalt for the Road,' " denied that it used the encroaching portion of the roadway with Semon's permission or consent and raised several affirmative defenses. In particular, County alleged that Semon's claims are time-barred under Code of Civil Procedure sections 318, 319, 320 and 338. County asserted it had a right to continued use and possession of the roadway through an implied dedication as well as a prescriptive easement pursuant to Civil Code sections 1006, 1007 and 1009.[6]

---

[6] Undesignated statutory designations are to the Civil Code.

5

County also filed a motion for summary judgment or adjudication on the basis that (a) County owns an easement through implied dedication for public use since it has been certified as a public County highway since 1953, (b) County has a prescriptive easement because County has maintained and improved the public road since 1953, and (c) Semon's claims are untimely.

In support of its motion for summary judgment or adjudication, County argued that "Wisconsin Avenue has been at its present location since at least 1953 when any potential claim arising from an alleged trespass accrued." Accordingly, County claimed the three-year statute of limitations applicable to a permanent trespass ran out in 1956. County also pointed out that after Semon came to believe that the roadway encroached on his property in 1993, he waited over 26 years to bring this action when the time for doing so had long expired. County further contended that the untimely action is not "save[d]" by Semon's assertion that County used the roadway through permission, as there is no "real or admissible evidence" that County did so, especially since County does not generally operate a designated highway on a private road through consent or permission, and "consent" requires "some type of agreement."

County also argued that because "Wisconsin Avenue" has been used and maintained as a public road between 1953, when it was a certified as a County highway, to 1971, it owns an easement for the roadway through an implied dedication for public use, a prescriptive easement for the current configuration of the roadway pursuant to section 1007, and a vested right of continued use of the roadway pursuant to section 1009, subdivision (d).

As factual support, County cited to a declaration from County's Public Works Director Michael Azevedo. Azevedo declared that since 1953, County has certified that "Wisconsin Avenue" is a County maintained highway, which generally means County performs all appropriate maintenance on the road and the road is included in County's certification for miles of maintained highways. Azevedo declared that "Wisconsin

6

Avenue's location as depicted in the County's 1953 Certification and Road System Map appears to match its current location as depicted on current maps. In that regard, the Public Works Department does not have any records indicating that Wisconsin Avenue has ever been moved from its location in 1953." Azevedo further declared that it has never been County's practice to allow a landowner to unilaterally pave, grade, repair or apply asphalt to County roads; such work requires an encroachment permit and the public works department does not have such a record for the encroaching portion of the roadway. Azevedo also stated that he is familiar with County road standards. He has inspected the chip seal on the encroaching area of the roadway; "it is typical of a road constructed and maintained by the County of Colusa."

In granting the motion for summary judgment, the trial court focused on whether the alleged trespass was permanent or transitory. Citing to *Starrh & Starrh Cotton Growers v. Aera Energy LLC* (2007) 153 Cal.App.4th 583 at page 592, the trial court agreed with County that the nature and the character of the road, i.e., that it was paved, is an established intrusion and the intended use of the roadway as part of a public roadway network demonstrated as a matter of law that the trespass was permanent. In light of this, the trial court held that the complaint fell outside the three-year statute of limitations under Code of Civil Procedure section 338. The trial court acknowledged a dispute about who may have installed some or all of the chip seal pavement but found that Semon was aware of the trespass since 1993 and waited until long past the three-year limitations period to file the lawsuit. The court found that Semon could not establish a permissive use agreement between Semon and County by relying on County's purported promise to realign the road at some point in the future, and that Semon's reliance on this purported promise was insufficient to justify his inaction or to toll the statute of limitation. The court stated, "[i]f all that was necessary to toll the running of the limitations period was the assertions of a permissive use agreement between parties in a trespass action on the basis of a vague statement by one side giving rise to complacency and inaction on the

7

other side, then the limitations period would be meaningless." The court found there was no evidence that Semon communicated or asserted permissive use to County or that County agreed to such an arrangement. The court concluded that because each cause of action is based on the underlying trespass, the expiration of the statute of limitations bars the suit.

In addition, the trial court found Semon's causes of action were barred by section 1009, subdivision (d), which states: "Where a governmental entity is using private lands by an expenditure of public funds on visible improvements on or across such lands or on the cleaning or maintenance related to the public use of such lands in such a manner so that the owner knows or should know that the public is making such use of his land, such use, including any public use reasonably related to the purposes of such improvement, in the absence of either express permission by the owner to continue such use or the taking by the owner of reasonable steps to enjoin, remove or prohibit such use, shall after five years ripen to confer upon the governmental entity a vested right to continue such use." The trial court found that the roadway is graded and paved to a degree, making improvements visible and the "evidence indicates that the county repeatedly represented to the state that the roadway was being maintained as a public roadway, hence public expenditure is established." The court found that the evidence was clear that, since 1993, Semon has been aware of the public use of his land, never made any express or implied grant or permission to County to use the land, did not take legal action to enjoin, remove or prohibit the use of his property, and more than five years has lapsed. As a result, the trial court held that as of June 12, 1998, County acquired a vested right in the use of Semon's land.

Finding all causes of actions time-barred and that County had a complete defense as to each of the causes of action, the trial court dismissed all causes of action with prejudice.

# DISCUSSION

"Wisconsin Avenue" is a County highway, originally designated to lie on a dedicated easement adjacent to Semon's property. The problem, and the subject of this lawsuit, is that the chip seal pavement that created the disputed roadway covers a portion of "Wisconsin Avenue" and a portion of Semon's property. Semon seeks to quiet title against that claim and to eject County from the encroaching portion of the roadway. Finally, Semon seeks declaratory relief in the form of a judicial determination that the true easement, without the encroaching portion, is the actual and proper location for County's roadway. Stated simply, Semon seeks to remove the encroaching portion of the roadway such that Semon can begin to personally use that portion of his property. In response, County argues Semon's delay in challenging its trespass means that the lawsuit is time-barred and allowed County to obtain a prescriptive right of use.

On appeal, Semon contends that the trial court erred in finding statements made by Rominger in 1993 regarding an agreement Rominger had with County in which Rominger would lay the chip seal outside of the easement so that County could later realign the road, were inadmissible hearsay. He further argues that his claims are not time-barred because the trespass to his parcel of property is continuous and not subject to the statute of limitations. Finally, Semon argues that the trial court improperly decided issues of fact while simultaneously determining there were none in dispute, especially regarding the nature of County's use of the property, whether such use was permitted by Semon, and whether County actually expended funds in maintaining the roadway.

## I

### *Standard of Review*

"We review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) We construe the moving party's evidence strictly, and the nonmoving party's evidence liberally, in

9

determining whether there is a triable issue. (*Alex R. Thomas & Co. v. Mutual Service Casualty Ins. Co.* (2002) 98 Cal.App.4th 66, 72, citing *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 20.)

A defendant moving for summary judgment "must satisfy the initial burden of production and make a prima facie showing that 'one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action.' " (*Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 79, quoting § 437c, subd. (p)(2).) If the defendant satisfies this burden, then the burden of production shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).) But the ultimate burden of persuasion remains with the defendant to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. (*Donohue v. AMN Services, LLC, supra*, at p. 79.) Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).)

As to whether the trial court erred in sustaining objections to evidence of the prior landowner's statements, which rulings Semon directly challenges on appeal, "if a party's position depends on patently inadmissible evidence admitted over a proper objection," or conversely if a party was prejudiced by the exclusion of admissible evidence, "a reviewing court would be empowered, and indeed obliged, to acknowledge the error" and review the evidence within the context of ruling on a motion for summary judgment. (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 711.) Because we conclude that there exist triable issues of material fact without relying on the evidence to which the trial court sustained objections, we need not review whether the objections were properly sustained. This should not be construed as stating any opinion on the evidentiary rulings the trial court will necessarily have to make during a trial. However, we note that the trial court failed to address Semon's arguments that Rominger's

10

statements are admissible as statements concerning property boundaries under Evidence Code section 1323. That statute vests trial courts with broad discretion to evaluate the entire record in a given case to determine whether " 'the statement was made under circumstances such as to indicate its lack of trustworthiness,' " including a declarant's potential interest in a disputed border and any motive to lie. (*McDermott Ranch, LLC v. Connolly Ranch, Inc.* (2019) 43 Cal.App.5th 549, 559-560.) This is similar to the trustworthy requirements for the admission of statements relevant to the declarant's state of mind under Evidence Code sections 1250 and 1252. For purposes of trial, we encourage the trial court to consider the statements' admissibility under Evidence Code section 1323 and, if appropriate, under Evidence Code sections 1250 and 1252.

II

*Status of Property from 1993 to Semon's Lawsuit*

In this case, there is a dispute as to when County's trespass began. As the trial court noted, there is a dispute as to when and by whom the chip seal layer was laid, thereby creating the roadway and the encroachment. County claims that it has been certifying "Wisconsin Avenue" as a "County Highway" subject to its maintenance since 1953 and any trespass began that year. Semon alleges the trespass began in April 2018, when he sent a letter to County withdrawing his consent to use the encroaching portion of the roadway and demanding realignment of the road. The trial court found the trespass began in 1993, when Semon recorded his deed to Lot No. 9 and promptly discovered the encroaching roadway. We first address the arguments relevant to the time frame beginning in 1993 through 2018.

A. *Trespass*

The right to exclude persons from using private property is a fundamental aspect of private property ownership. (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 258, citing *Loretto v. Teleprompter Manhattan CATV Corp.* (1982) 458 U.S. 419, 435.) To bring a claim for trespass, an entry must be without permission

11

and an unlawful interference with that right of possession of property. (*Cobb v. City of Stockton* (2011) 192 Cal.App.4th 65, 73; *Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1406.) The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm. (*Ralphs Grocery Co. v. Victory Consultants, Inc., supra*, at pp. 261-262; see also CACI No. 2000.) "The essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another. Such invasions are characterized as intentional torts, regardless of the actor's motivation. Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong." (*Civic Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, 16-17.)

In California, the statute of limitations for bringing a trespass claim is three years. (Code Civ. Proc., § 338, subd. (b).) Because the injury in a trespass is an injury to the property rather than to the property owner, "the running of the statute of limitations against a claim bars the owner and all subsequent owners of the property." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1216.) "In other words, the statute of limitations does not commence to run anew every time the ownership of the property changes hands." (*Ibid.*) Whether a trespass claim is barred by the statute of limitations turns on whether the wrongdoing is permanent or continuing in nature. (See *Starrh & Starrh Cotton Growers v. Aera Energy LLC, supra*, 153 Cal.App.4th at p. 592.) A permanent trespass is an intrusion on property under circumstances that indicate an intention that the trespass shall be permanent. The cause of action accrues and the statute of limitations begins to run at the time of entry. (*Ibid.*)

Examples of permanent trespassing recognized by the courts include the encroachment of buildings (*Castelletto v. Bendon* (1961) 193 Cal.App.2d 64; *Troeger v. Fink* (1958) 166 Cal.App.2d 22), walls, foundations, pipes, and vents erected on

12

another's property (*Tracy v. Ferrera* (1956) 144 Cal.App.2d 827), and railroad tracks (*Williams v. Southern Pacific R.R. Co.* (1907) 150 Cal. 624). In *Polin v. Chung Cho* (1970) 8 Cal.App.3d 673, the court stated, "with respect to buildings or railroads tortiously placed on a plaintiff's land, California cases have not permitted the plaintiff to consider the trespass continuing, but have required the plaintiff to consider the trespass permanent as of the date of completion of construction and thus have held plaintiff's cause of action barred if not brought within three years of that date. [Citations.]" (*Id.* at pp. 677-678.)

The trial court found the trespass to be permanent and in place since 1993. We agree that the roadway here is similar to those structures which the courts have determined are permanent for the purpose of the running of the three-year statute of limitation for trespass. The roadway is asphaltic in nature and was meant to ease travel through the area for a sustained period of time. The continued use for such purposes, however, does not render the trespass continuing. Where, as here, the impact of the trespass does not vary over time, the trespass is permanent. (See *Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 233-234.) Yet we find it premature, and therefore unnecessary to resolve this question. Instead, we find the critical question to be when the trespass began. Because the date of encroachment and thus the underlying trespass is a triable issue of material fact, even if we concluded the trespass was permanent, without the date the trespass began, we are unable to determine when the statute of limitations would run.

It is undisputed that the chip seal layer was on the roadway at the time Semon purchased his property and recorded the deed in 1993. County asserts that at the latest, County's trespass began when he discovered the encroachment in 1993. However, Semon states that there was no trespass at that time because, after he alerted County that the chip seal layer created a roadway that encroached on his property, Semon "gave permission and consented to the County's encroachment and use" of that portion of the

13

roadway. Although Semon admitted in his deposition that he did not communicate his consent in writing nor did he enter into an "agreement" with County, Semon said that he had established a verbal agreement of sorts where he had a good working relationship with County representatives and was led to believe through the informal process that County would realign the roadway. Semon also states that in 1997, he reaffirmed his consent when he told County "that using the Road is ok but that it just needs to be re-aligned within it[s] Easement."

If Semon consented to County's use of the encroaching roadway, County did not trespass until Semon withdrew his consent in April 2018, the statute of limitations did not expire, and County cannot establish a defense pursuant to Code of Civil Procedure section 338. County attempts to show it is undisputed that there was no consent by relying solely on Semon's deposition testimony of his understanding of an implied "verbal agreement" he had with County. However, we find Semon's declaration that he verbally consented on multiple occasions to County's use, raises a disputed issue as to a material fact as to whether County's use of the encroaching roadway was with Semon's permission. (Cf. *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 106 [when a witness's deposition is squarely controverted by a plaintiff's declaration, the witness's statement is not a "material fact"].)

Nevertheless, County asserts that as a matter of law there was no consent because there was no mutual agreement with County as to the continued use of the road. As support for this proposition, County cites to authorities involving contract law. (§§ 1550, 1565; *Sieck v. Hall* (1934) 139 Cal.App. 279, 291.) County cites no authority, and we are aware of none, that a mutual agreement or contract is necessary to establish consent within the context of an allegation of trespass. Instead, it has long been established that the property owner possesses the right to consent to another's entry into the owner's property. "One who is on the land of others without *their* consent and against *their* will, is a 'trespasser.' " (*MacLeod v. Fox West Coast Theatres Corp.* (1937) 10 Cal.2d 383,

14

387, italics added.) Accordingly, we reject County's argument that there was no consent because County did not *agree* to the consent.

We therefore conclude that there is a triable issue as to whether Semon consented to County's use of the encroaching portion of the roadway from 1993 to 2018, just prior to the filing of the lawsuit.

B. *Civil Code section 1009*

As relevant to Semon's discovery of the encroachment in 1993, County asserts that it has obtained a prescriptive easement pursuant to section 1009. Semon disagrees, arguing there is a triable issue of material fact as to whether County expended any public funds for maintenance of the roadway. We agree with Semon.

A private landowner may transfer (the legal term is dedicate) an interest in land to the public for no compensation. (*Scher v. Burke* (2017) 3 Cal.5th 136, 141.) This could occur through either the common law or statute. (*Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 820; *Mikkelsen v. Hansen* (2019) 31 Cal.App.5th 170, 176.) Prior to the enactment of section 1009 on March 4, 1972, there were various ways to obtain such a dedication: the process generally included an examination of the owner's intent to offer the land (either through overt acts or other evidence that supports an attribution of intent to dedicate) and an acceptance of that offer by the public (either formally by the proper public officials or through a sustained use of the property by the public). (*Mikkelsen v. Hansen, supra*, at pp. 175-176.) However, the landscape surrounding dedications of property changed with the enactment of section 1009.

Section 1009 provides that ". . . except as otherwise provided in subdivision (d), no use of [private real property] by the public after the effective date of this section shall ever ripen to confer upon the public . . . a vested right to continue to make such use permanently" without an express dedication by the owner. (§ 1009, subd. (b); see *Friends of the Trails v. Blasius, supra*, 78 Cal.App.4th at p. 823.) To reiterate, subdivision (d) permits dedication by prescription where "a governmental entity is using

15

private lands by an expenditure of public funds on visible improvements on or across such lands or on the cleaning or maintenance related to the public use of such lands . . . in the absence of either express permission by the owner to continue such use or the taking by the owner of reasonable steps to enjoin, remove or prohibit such use, shall after five years ripen to confer upon the governmental entity a vested right to continue such use." (§ 1009, subd. (d).) Thus, as of March 4, 1972, for noncoastal properties used by the public for nonrecreational use, a prescriptive right of use is available *only* where governmental agencies have improved, maintained, or cleaned the land by expenditure of public funds. (*Scher v. Burke, supra*, 3 Cal.5th at p. 144; *County of Los Angeles v. Berk* (1980) 26 Cal.3d 201, 231 (dis. opn. of Clark, J.).)

Here, County asserts it meets the requirements of section 1009 because since 1953 it has certified to the State of California that "Wisconsin Avenue" is a County maintained public highway. In support of this assertion, County cites a provision of the Highway Users Tax Account statutes, which requires counties to submit the mileage of highways it maintains. (See Sts. & Hy. Code, § 2121.) However, the encroachment is not necessarily "Wisconsin Avenue" as County has certified. Indeed, the disputed portion of the roadway is that portion which abuts Wisconsin Avenue and encroaches upon Semon's property. County offers no evidence that it actually expended funds for visible improvements, maintenance or cleaning related to the public use of the encroaching portion of the roadway. County's failure to provide this evidence defeats, for purposes of summary judgment, its claim that it has acquired a vested right of use under section 1009.

III

*Status of Property prior to 1993*

County argues that it has complete defenses to Semon's claims based on the status of the property prior to 1993. Specifically, County claims that because "Wisconsin Avenue" existed as a permanent fixture since 1953, any trespass began at that time and the statute of limitations for bringing this claim expired in 1956. County also claims that

16

prior to 1971, it obtained an easement through implied dedication and a prescriptive easement under section 1007. Semon disagrees, arguing that there is a triable issue of material fact as to whether the public ever used the roadway prior to 1971. We agree with Semon.

A. *Trespass*

As previously mentioned, the parties dispute when the trespass began. County repeatedly relies on the fact that "Wisconsin Avenue" has existed since at least 1953, thus the basis for any claim began in 1953. Yet County officials admitted that prior to 1993 County did not survey the portion of "Wisconsin Avenue" (south to north), adjacent to Semon's property but that "[e]veryone has agreed . . . that [Wisconsin Avenue's] current location deviates from the deeded easement." Thus, it appears from the record before us that "Wisconsin Avenue" as it exists on official documents is different than the chip sealed roadway. Moreover, only the portion of the chip sealed roadway that encroaches on Semon's land serves as the basis for Semon's trespass claim. County has offered no evidence that County actually laid the chip seal or that it was laid in 1953. In fact, the parties dispute when and by whom the chip sealed roadway was created. Because the earliest date the trespass could begin is when the chip seal was laid, without that date, we cannot conclude as a matter of law that a trespass began in 1953 and that the statute of limitations expired in 1956. County's failure to show that the portion of the chip sealed roadway that encroaches onto Semon's property and abuts "Wisconsin Avenue" has existed since 1953 results in a failure to meet its burden, for purposes of summary judgment, to show there is a complete defense to Semon's cause of action for trespass as time-barred as of 1956.

B. *Implied Dedication*

County asserts that it obtained an implied dedication of the land used for the roadway prior to 1971, long before Semon purchased Lot No. 9. " 'Dedication has been defined as an appropriation of land for some public use, made by the fee owner, and

17

accepted by the public. By virtue of this offer which the fee owner has made, he is precluded from reasserting an exclusive right over the land now used for public purposes. American courts have freely applied this common law doctrine, not only to streets, parks, squares, and commons, but to other places subject to public use. California has been no exception to the general approach of wide application of the doctrine.' " (*Friends of the Trails v. Blasius, supra*, 78 Cal.App.4th at p. 820.)

As previously mentioned, the law regarding dedications of private land for public use changed in 1972 through the enactment of section 1009. "The provision also operates prospectively only, forbidding reliance only on post-1972 public use to support a claim of implied dedication." (*Scher v. Burke, supra*, 3 Cal.5th at p. 147.) This means the statute does not affect rights that vested before March 4, 1972. (*Friends of the Trails v. Blasius, supra*, 78 Cal.App.4th at p. 823.) As relevant here, to prove a common law dedication of property to the public prior to the change in law in 1972, a litigant must establish open and continuous use by the public for the prescriptive period. (*Gion v. City of Santa Cruz* (1970) 2 Cal.3d 29, 38, superseded by statute as stated in *Scher v. Burke, supra*, 3 Cal.5th at p. 139.) For those actions, the question is whether the public has used the land " 'for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone.' " (*Union Transp. Co. v. Sacramento County* (1954) 42 Cal.2d 235, 240.) Litigants seeking to show that land has been dedicated to the public need only produce evidence that persons have used the land as they would have used public land. "If a road is involved, the litigants must show that it was used as if it were a public road. Evidence that the users looked to a governmental agency for maintenance of the land is significant in establishing an implied dedication to the public." (*Gion v. City of Santa Cruz, supra*, at p. 39.) The evidence must also demonstrate that "various groups of persons," not a "limited and definable number of persons," have used the land " 'when they wished to do

so without asking permission and without protest from the land owners.' " (*Id.* at pp. 39, 40.)

County argues that because "Wisconsin Avenue" has been a certified highway maintained by County for public use for almost 70 years, County has shown that the road has been used as a road for more than five years and that County has continuously provided all appropriate maintenance for that road over that time. As a result, County argues, it has acquired an easement through implied dedication. In that sense, County asserts that this case is similar to *Bess v. County of Humboldt* (1992) 3 Cal.App.4th 1544, 1550. We disagree on both counts.

In *Bess*, there was evidence that the general public used the road at issue to gain access to a river. The plaintiffs were also notified that their purchases of the parcels of property were subject to the rights of the State of California in the nearby river, and of the public to use the road. (*Bess v. County of Humboldt, supra*, 3 Cal.App.4th at p. 1548.) Not so here. Here there is no evidence the public ever used the encroaching portion of the roadway. In this respect, this case is more like *Friends of Hastain Trail v. Coldwater Development LLC* (2016) 1 Cal.App.5th 1013, 1035-1036, where evidence that sporadic and inconsistent use of a trail by seven hikers throughout the prescriptive period was insufficient to support an implied dedication of an easement, because as the court held, the public's use must be sufficient to put the owner on notice that their property is in danger of being publicly dedicated. (*Id.* at pp. 1029-1030.) Here, County has not provided *any* evidence of public use between 1953 and 1972. Nor are we inclined to presume that "various groups of persons" did so and that public use was "substantial" in light of the fact that the first residence on the road was purportedly not constructed until 1977. (See *Gion v. City of Santa Cruz, supra*, 2 Cal.3d at p. 39; *County of Los Angeles v. Berk, supra*, 26 Cal.3d at p. 209; cf. *Brumbaugh v. County of Imperial* (1982) 134 Cal.App.3d 556, 560 [dedication of land was proven when many witnesses testified

to the use the road over the years for access to the nearby river in connection with recreational activities such as boating, fishing, camping, and hunting].)

Also in *Bess*, Humboldt County recognized the road at issue was "a part of the county road system, certified to the state that it had an obligation to maintain the road and, *in fact, performed routine maintenance* on it over the years." (*Bess v. County of Humboldt, supra*, 3 Cal.App.4th at p. 1548, italics added.) In contrast here, County has provided no evidence that it, *in fact, performed routine maintenance* on the roadway between 1953 and 1972.[7] (See *Aptos Seascape Corp. v. County of Santa Cruz* (1982) 138 Cal.App.3d 484, 502 [where, prior to 1972, there was no evidence of any governmental maintenance of the disputed area and evidence of only occasionally permitted use, the evidence did not support an implied dedication].) Accordingly, County has not shown, for purposes of summary judgment, that it has a complete defense to Semon's claims through an implied easement.

C. *Prescriptive Easement*

County also claims that it has a complete defense to Semon's causes of action because, prior to 1972 when section 1009 was enacted, it acquired a prescriptive easement under section 1007. A prescriptive easement, if shown, is a defense to trespass, ejectment and quiet title causes of action. (See *Kapner v. Meadowlark Ranch Assn.* (2004) 116 Cal.App.4th 1182, 1189 [a trespass is an invasion of the exclusive possession of land by entry upon it, which does not happen if a defendant meets the criteria for a prescriptive easement]; *Wood v. Truckee Turnpike Co.* (1864) 24 Cal. 474, 478 ["An action of ejectment will not lie against one claiming an easement in a parcel of land, to

---

[7] Although the record contains evidence that County placed stop signs along "Wisconsin Avenue," County does not rely on this as evidence of public fund expenditure for maintenance. Indeed, it is unclear from the evidence that the stop signs are relevant to the encroaching portion of the roadway.

try his right to enjoy the same"]; *Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1096 [an action to quiet title to real property is considered one for the recovery of property, and subject to the limitations set forth in §§ 318 & 321].)

To establish the elements of a prescriptive easement, County must prove use of the property, for the statutory period of five years, which use has been (1) open and notorious; (2) continuous and uninterrupted; (3) hostile to the true owner; and (4) under claim of right. (§ 1007; Code Civ. Proc., § 321; *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305.) A claim of right does not require a belief or claim that the use is legally justified. (*Lord v. Sanchez* (1955) 136 Cal.App.2d 704, 707.) It simply means that the property was used without permission of the owner of the land. (*Ibid*.)

As noted above, there exist several triable issues as to material facts that defeat County's request for summary judgment on this asserted defense. First, there is no evidence when or by whom the chip sealed roadway, and accordingly the encroachment, was created. In addition, whether the public actually used the encroaching portion of the roadway prior to 1972, and whether such use was hostile, are also disputed. As a result, we cannot conclude as a matter of law that the encroaching portion of the roadway existed or was used in a manner that was open and hostile for five years prior to the law change in 1972.

Finding there are triable issues of fact pertaining to Semon's causes of action and County's defenses, we conclude that County is not entitled to judgment as a matter of law. As such, we reverse the trial court's grant of summary judgment.

**DISPOSITION**

The trial court's ruling granting the motion for summary judgment is reversed. Semon shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
EARL, J.


We concur:


/s/
HULL, Acting P. J.


/s/
KRAUSE, J.